**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

BENJIE D.,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

No. 2:25-cv-08289-AYP

MEMORANDUM OPINION AND ORDER

Plaintiff Benjie D.[1] seeks review of the Commissioner's denial of his application for disability insurance benefits under Title II of the Social Security Act. (Dkt. No. 1.) The parties consented to proceed before the magistrate judge and thereafter filed briefs addressing the disputed issues. (Dkt. Nos. 6, 7, 11, 15, 16, 18.) The Court took the matter under submission without oral argument. For the reasons discussed below, the Court finds that the Commissioner's decision should be reversed and this matter remanded for further proceedings

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

consistent with this Order.

## I. BACKGROUND

On March 21, 2023, Plaintiff applied for disability insurance benefits, alleging disability beginning December 27, 1997. (Administrative Record ("AR") 247-48.) After his application was denied initially and upon reconsideration, he requested a hearing before an administrative law judge ("ALJ"). (AR 99-103, 111-17.) The ALJ conducted a hearing on May 7, 2025, at which Plaintiff appeared with counsel and testified. (AR 34-66.) A vocational expert ("VE") also testified. (AR 68-79.)

On May 30, 2025, the ALJ issued a decision denying benefits. (AR 16-33.) Following the five-step sequential evaluation process applicable to disability determinations,[2] the ALJ found that Plaintiff had the following "severe" impairments: anxiety with depressed mood, major depressive disorder, and schizoaffective disorder. (AR 22.) The ALJ determined that Plaintiff nevertheless retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: "understand, remember, and carry out simple instructions; occasional interactions with supervisors, coworkers, and the public; and deal with occasional changes in a routine work setting." (AR 24.) At step four, the ALJ determined that Plaintiff had no past relevant work. (AR 27.) At step five, relying on the VE's testimony, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, including cleaner II, kitchen helper, and commercial or institutional cleaner. (AR 28.)

[2] The ALJ determines disability using a five-step sequential evaluation process, which examines whether (1) the claimant engaged in substantial gainful activity, (2) the claimant has a severe impairment, (3) the impairment meets or equals a listed impairment, (4) the claimant is able to do past relevant work, and (5) the claimant is able to do any other work. 20 C.F.R. § 404.1520(a)(4).

Accordingly, the ALJ concluded that Plaintiff was not disabled from his alleged onset date of December 27, 1997, through March 31, 2003, Plaintiff's date last insured. (AR 29.)

On June 27, 2025, Plaintiff filed a request with the Appeals Council for review of the ALJ's decision. (AR 239-43.) The Appeals Council subsequently denied Plaintiff's request for review. (AR 1-6.)

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is supported by substantial evidence and whether the proper legal standards were applied. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). "Substantial evidence" is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). In determining whether substantial evidence supports the ALJ's findings, the Court must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. *Ahearn v. Saul*, 988 F.3d 1111, 1115-16 (9th Cir. 2021). When the evidence can rationally be interpreted in more than one way, the Court must uphold the Commissioner's decision. *Id.*; *Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016).

## III. DISCUSSION

Plaintiff contends that the ALJ erred in evaluating the medical opinion of Charles Carlstroem, M.D., Plaintiff's treating psychiatrist. Specifically, he argues that the ALJ failed to explain how the RFC limitation to occasional interactions with supervisors, coworkers, and the public adequately accounts for Dr. Carlstroem's opinion that Plaintiff was "moderately" limited in his ability to interact appropriately with others. (Dkt. No. 11 at 5-7.) As discussed below, the Court finds that the ALJ failed to adequately explain how the RFC

accommodated this limitation.

A claimant's RFC is the most the claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In assessing a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical opinions. 20 C.F.R. § 404.1545(a)(3). Although the ALJ need not adopt a medical opinion verbatim and may translate clinical findings into work-related limitations, the ALJ must provide sufficient reasoning to permit meaningful judicial review of whether the RFC and the evaluation of the medical evidence are supported by substantial evidence. *Bryant L. v. Bisignano*, 2026 WL 2201144, at *1 (C.D. Cal. July 29, 2026) (citing *Rounds*, 807 F.3d at 1006; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014)).

Dr. Carlstroem began treating Plaintiff in 1999. (AR 718.) In 2023, he completed a checkbox assessment form evaluating Plaintiff's mental limitations. (AR 715-21.) He listed Plaintiff's diagnosis as schizophrenic or delusional disorder. (AR 721.) He checked boxes indicating, among other things, that Plaintiff had moderate limitations in his ability to interact appropriately with supervisors, coworkers, and the public. (AR 716.) The form defined a "moderate" limitation as a "significant" deficit that "could not be ignored by a supervisor, coworker, peer, or the public," with performance "more than one standard deviation from the mean." (AR 715.) In support of these limitations, Dr. Carlstroem explained that Plaintiff had persecutory thoughts, sometimes "to the point of frank delusions," that "various people are hostile toward him due to his race" and "that he is being watched, followed, [and] undermined." He stated that these symptoms had caused Plaintiff to lose jobs in the past. (AR 716.) He also noted that Plaintiff had difficulty

clarifying nonroutine issues and exhibited hesitant speech and repetition of words and phrases. (AR 716.) Although Dr. Carlstroem completed the opinion in 2023, he indicated that his assessment applied retrospectively to the period before Plaintiff's date last insured of March 31, 2003. (AR 721.)

In considering Dr. Carlstroem's opinion, the ALJ found it "persuasive" because it "is supported by his own explanation and mental status examination findings" and "consistent with the record as a whole." (AR 27.) Ultimately, the ALJ limited Plaintiff, in relevant part, to "occasional interactions with supervisors, coworkers, and the public." (AR 24.)

The ALJ failed to adequately explain how the RFC limitation to occasional interactions with supervisors, coworkers, and the public accounted for Dr. Carlstroem's opinion. Although the ALJ found Dr. Carlstroem's opinion persuasive, he did not explain how limiting the *frequency* of Plaintiff's interactions with others accounted for the significant deficits in his ability to interact *appropriately* with them. As noted above, the assessment form defined a "moderate" limitation as a significant deficit that could not be ignored by supervisors, coworkers, or the public. (AR 715.) Moreover, Dr. Carlstroem explained that Plaintiff experienced persecutory thoughts and delusions involving other people, which had caused him to lose jobs in the past. The ALJ did not explain how limiting Plaintiff to occasional interactions would accommodate these difficulties. *See, e.g., Angel M. v. Bisignano*, 2025 WL 2410520, at *1-2 (N.D. Cal. Aug. 20, 2025) (distinguishing between the frequency and nature of social interactions and finding that occasional interaction did not account for a credited limitation to superficial interaction); *Alejandro D. v. King*, 2025 WL 3899328, at *4-5 (C.D. Cal. Feb. 12, 2025) (finding that occasional interactions did not adequately account for accepted limitations to brief and superficial interactions); *Jason W. v. O'Malley*, 2024 WL 6994761, at *3-5 (C.D. Cal. July 31, 2024) (finding error where the ALJ

failed to adequately incorporate or explain the omission of a credited limitation to brief, superficial interactions).

The VE's testimony raises further questions about whether the RFC adequately accounted for Dr. Carlstroem's opinion. At the hearing, the VE explained that he understood "interaction" primarily as talking or conveying information. (AR 76-77.) Thus, under the VE's interpretation, the RFC limitation to occasional interactions would not necessarily preclude Plaintiff from working in proximity to coworkers throughout the entire workday. The ALJ did not address whether such proximity was consistent with Dr. Carlstroem's findings concerning Plaintiff's suspiciousness of coworkers and supervisors and his difficulty interacting appropriately with others. Accordingly, because the Court cannot reasonably discern how the ALJ accounted for these limitations in the RFC, remand is warranted for further explanation. *See Treichler*, 775 F.3d at 1103.

Defendant, however, contends that the ALJ properly evaluated Dr. Carlstroem's opinion and was not required to incorporate every limitation assessed by a medical source into the RFC. (Dkt. No. 15 at 3.) Although Defendant correctly notes that the ALJ is responsible for formulating the RFC, the issue here is not whether the ALJ was required to adopt Dr. Carlstroem's opinion verbatim, but whether he adequately explained how the RFC accommodated the limitations in an opinion he found persuasive. As discussed above, the ALJ failed to provide such an explanation.

Defendant also relies on *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008) and the State Agency psychologist's opinion in arguing that the ALJ permissibly translated Dr. Carlstroem's moderate limitations into occasional interactions with others. (Dkt. No. 15 at 5-8.) In *Stubbs-Danielson*, the Ninth Circuit upheld an ALJ's RFC assessment where one medical source had translated another medical source's assessment of moderate mental

limitations into a restriction to simple tasks. *Stubbs-Danielson*, 539 F.3d at 1174. Here, although the State Agency psychologist assessed "moderate" limitations in social functioning and concluded that Plaintiff could tolerate occasional interactions with supervisors, coworkers, and the public, there is no indication that the psychologist adopted Dr. Carlstroem's definition of "moderate" or his findings concerning Plaintiff's significant difficulties interacting appropriately with others. (*See* AR 92, 94, 96.) Thus, unlike in *Stubbs-Danielson*, the State Agency psychologist does not appear to have translated Dr. Carlstroem's particular limitations into functional restrictions, and that opinion therefore does not explain how the ALJ accounted for those limitations in the RFC.

Finally, Defendant points to the ALJ's finding of "moderate" limitations in interacting with others under the "paragraph B" criteria, apparently to argue that the ALJ accounted for the "moderate" limitations assessed by Dr. Carlstroem. (Dkt. No. 15 at 5.) However, the paragraph B criteria are used to assess the severity of mental impairments at steps two and three, rather than to determine a claimant's RFC. *See* 20 C.F.R. § 404.1520a(d); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Moreover, a "moderate" limitation under the paragraph B criteria means that a claimant's functioning in the relevant area is "fair," whereas Dr. Carlstroem's assessment defined "moderate" as a significant deficit that could not be ignored by supervisors, coworkers, or the public. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(c). Thus, the ALJ's paragraph B findings do not show that he adequately considered Dr. Carlstroem's particular limitations in formulating the RFC.

For the foregoing reasons, the Court finds that the ALJ failed to

adequately explain how the RFC accounted for Dr. Carlstroem's opinion.

**IV. REMEDY**

The decision whether to remand for further proceedings or for an immediate award of benefits is within the Court's discretion. *See Treichler*, 775 F.3d at 1099-1102. When there are outstanding issues that must be resolved before a disability determination can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if the evidence were properly evaluated, remand for further proceedings is appropriate. *Id.* In contrast, an immediate award of benefits is appropriate only where further proceedings would serve no useful purpose and the record has been fully developed. *Id.*

Here, remand for further administrative proceedings is appropriate to allow the ALJ to adequately explain how the RFC accounts for Dr. Carlstroem's opinion or to reconsider the RFC as necessary.

**V. ORDER**

For the foregoing reasons, IT IS ORDERED that the decision of the Commissioner is reversed and this matter is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED: November 13, 2026

ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE